JUDGE DAVID GUADERRAMA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

FILED
2022 JUN 24 PM 4: 29
CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY

| | |
|---|---|
| **MABEL ARREDONDO,** § | |
| § | |
| Plaintiff, § | |
| § | EP22CV0221 |
| v. § | |
| § | |
| **MV REALTY PBC, LLC** § | |
| A Florida Limited Liability Company, § | |
| § | |
| Defendant. § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1. The Plaintiff is MABEL ARREDONDO ("Plaintiff") a natural person, resident of the Western District of Texas, and was present in Texas for all calls, in this case in El Paso County, Texas.

2. Defendant MV REALTY PBC, LLC, ("MV REALTY") is a Limited Liability Company organized and existing under the laws of Florida and can be served via registered agent Amanda Zachman at 219 N. Dixie Blvd, Delray Beach, FL 33444.

### JURISDICTION AND VENUE

3. **Jurisdiction.** This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject

1

matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 302.101 because that claim arises from the same nucleus of operative fact, i.e., Defendant' telemarketing robocalls to Plaintiff; adds little complexity to the case.

4. **Personal Jurisdiction.** This Court has general personal jurisdiction over the defendant because they have repeatedly placed calls to Texas residents, and derive revenue from Texas residents, and they sell goods and services to Texas residents, including the Plaintiff.

5. **Venue.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. Residing in the Western District of Texas when he received a substantial if not every single call from the Defendant that are the subject matter of this lawsuit.

6. This Court has venue over the Defendant because the calls at issue were sent by or on behalf of the above-named Defendant to the Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT
## OF 1991, 47 U.S.C. § 227

7. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

8. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic

telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

9. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

10. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

11. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

12. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

13. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

14. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

3

15. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

16. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

17. The FCC confirmed this principle in 2013 when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

18. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

19. A corporate officer involved in the telemarketing at issue may be personally liable under the

4

TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## FACTUAL ALLEGATIONS

20. Plaintiff's number has been successfully registered on the Do-Not-Call Registry since March 2022.

21. Since at least 2020 Defendant MV REALTY PBC, LLC, and MITCHELL have facilitated, marketed, directed, and enabled the "realty" activities of Defendant MV REALTY PBC, LLC.

22. Defendant MITCHELL is the chief executive officer of MV REALTY PBC, LLC.

23. Plaintiff received at least four calls within a month to her cell phone 915-*9*-*2*9 without her prior express consent and not related to an emergency purpose, selling "realtor" services from Defendant MV REALTY PBC, LLC.

24. On May 24, 2022, Plaintiff received a phone call from phone number 915-615-2097. Plaintiff answered the phone and upon answering was asked if Plaintiff was going to sell her home anytime soon. Plaintiff advised that she had just purchased the home in January of 2021. The telemarketer proceeded by asking questions about Plaintiff's home and address. The Telemarketer then advised Plaintiff that if she ever decided to sell her home, they can assist her, and she would get paid $702 for these services with no obligation to sell her home.

25. The telemarketer in ¶24 did not properly identify themself or on whose behalf the calls were being made in violation of 47 C.F.R. 64.1200(d)(4). Plaintiff did not consent to receive any follow-up calls from the telemarketer or any of the telemarketer's affiliates.

26. Plaintiff later received a call from Theresa Cubit advising that a notary public will be going to her home to get a document signed which binds Plaintiff to use MV Realty PBC as the listing agent whenever she decides to put her home on the market within the next 20 years.

27. Plaintiff is not selling her home. However, in order to cease harassment from the anonymous robocallers, such as the Defendant, Plaintiff advised the representative she would consider selling her home for the sole purpose of identifying who was calling and/or the company who was responsible for calling.

28. On May 24, 2022, Plaintiff received an email from Defendant's agent Theresa Cubit theresacubit@homesatmv.com that contained the MVR Homeowner Benefit Agreement. The email also stated that a notary would be by later on in the day.

29. On May 27, 2022, Plaintiff emailed a letter to Theresa Cubit informing them of the unauthorized telemarketing calls. The email was sent to theresacubit@homesatmv.com. Plaintiff did not receive an "undeliverable" message indicating that the email was not successfully received by Defendant's representative. Plaintiff received 2 additional phone calls from Defendant despite Plaintiff's request via email to cease calling Plaintiff.

30. Table below displays calls made to Plaintiff by Defendant:

| Number: | Date | Time | Caller ID | Notes |
|---|---|---|---|---|
| 1 | 5/24/2022 | 1:18 PM | 915-615-2097 | Call from a telemarketer asking if wanted money but need to sign a contract for a realtor in the even I sold my home in the next 40 years. |

| 2 | 05/24/2022 | 1:21 PM | 512-772-9985 | Call from realtor Theresa Cubit sent over a contract and asked what time the notary can come to meet me for my signature. |
| 3 | 06/07/2022 | 2:32 PM | 512-772-9985 | Call from realtor Theresa Cubit calling to follow up to see if I was still interested in signing a contract. |
| 4 | 06/14/2022 | 4:57 PM | 512-772-9985 | Call from Theresa Cubit advising additional details about the program and that I would be given $702.00 for signing the contract. |

31. Defendant participated in, facilitated, directed, authorized, knew of, or willfully ignored the harassing telemarketer calls, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of their employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful telemarketer calls.

32. Each and every call was placed without the maintenance of an internal do-not-call policy. Each and every call failed to identify the telemarketers and parties they were calling on behalf of. Each and every call was placed without training their agents/employees on the use of an internal do-not-call policy.

33. Plaintiff has limited data storage capacity on her cellular telephone. Incoming telemarketing calls consumed part of this capacity.

34. No emergency necessitated the calls.

35. Defendant never sent Plaintiff any do-not-call policy. Plaintiff sent an internal do-not-call policy request to TheresaCubit@homesatmv.com on June 10, 2022.

36. On information and belief, Defendant did not have a written do-not-call policy while it was

sending Plaintiff the unsolicited calls.

37. On information and belief, Defendant did not train its agents who engaged in telemarketing on the existence and use of any do-not-call list.

## THE SELLERS SHOULD BE HELD LIABLE TO UPHOLD THE DETERRENT EFFECT AND PURPOSE OF THE TCPA

38. As the court ruled in Jackson v Caribbean Cruise Line, Inc., the defendant sellers should be held liable for their violations of the TCPA. Courts have looked at the purpose of the TCPA and found that not holding the sellers liable through vicarious liability would undermine the purpose of the TCPA.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES AS A RESULT OF THE CALLS

39. Defendant's calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

40. Defendant's calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

41. Defendant's calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone line.

42. Defendant's calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

43. Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of my cell phone.

## Plaintiff's cell phone is a residential number

44. The calls were to Plaintiff's cellular phone 915-9*9-*2*9 which is Plaintiff's personal cell phone that she uses for personal, family, and household use. Plaintiff maintains no landline phones at her residence and has not done so for at least 5 years and primarily relies on

cellular phones to communicate with friends and family. Plaintiff also uses her cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has her cell phone registered in her personal name, pays the cell phone from her personal accounts, and the phone is not primarily used for any business purpose.

## I. FIRST CLAIM FOR RELIEF

### (Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))

1. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2. The foregoing acts and omissions of Defendant and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

   a. a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1);[2]

   b. training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2);[3] and,

   c. in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 – 26 (codifying a June 26, 2003 FCC order).

3. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

4. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

5. Plaintiff also seeks a permanent injunction prohibiting Defendant and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement a do-not-call list and training thereon and (2) include the name of the individual caller and AFS's name in the solicitations.

## II. SECOND CLAIM FOR RELIEF:

### Violations of the TCPA "Sales/DNC" Prohibitions 47 C.F.R. § 64.1200(c)

1. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2. Defendant called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C. § 227(c)(3)(F) and 47 C.F.R. § 64.1200(c)(2).

3. Plaintiff was statutorily damaged at least three (3) times under 47 U.S.C. § 227(c)(3)(F) by the Defendant by the telephone calls described above, in the amount of $500 per call.

4. Plaintiff is entitled to an award of up to $1500 in damages for each knowing and willful violation of 47 U.S.C. § 227(c)(3)(F).

5. court costs and investigation costs, deposition expenses, witness fees and attorney's fees.

## III. PRAYER FOR RELIEF

WHEREFORE, Plaintiff MABEL ARREDONDO prays for judgment against the Defendant jointly and severally as follows:

    A.    Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

    B.    A declaration that actions complained of herein by Defendant violates the TCPA and Texas state law;

    C.    An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

    D.    An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation for four (4) calls.

    E.    An award to Plaintiff of damages, as allowed by law under the TCPA;

    F.    An award to Plaintiff of interest, costs, and attorneys' fees, as allowed by law and equity;

    G.    Such further relief as the Court deems necessary, just, and proper.

Plaintiff hereby demands a jury trial for all claims so triable.

June 24, 2022,                        Respectfully submitted,

*Mabel Arredondo*

MABEL ARREDONDO
Plaintiff, Pro Se
9328 Lait Drive
El Paso, TX 79925
915-999-8219